NO. 07-05-0136-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 28, 2006
_____

ROBERT HOLLEMAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-400231; HONORABLE BRADLEY S. UNDERWOOD, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Following a plea of not guilty, appellant Robert Holleman was convicted by a jury of possession of cocaine in a drug-free zone with intent to deliver and sentenced to life imprisonment.[1]  Appellant was convicted after being linked to baggies of crack cocaine found during the execution of a search warrant at a Lubbock residence.  By a single issue, appellant contends the evidence was factually insufficient to support the jury's finding that he possessed the cocaine.  We affirm.

---

[1] Appellant pled true to three enhancement paragraphs alleging prior felony convictions for possession of controlled substances.

On June 27, 2002, members of the South Plains Regional Narcotics Task Force, in conjunction with the Lubbock SWAT team, conducted a raid on a Lubbock residence believed to be associated with the trafficking of narcotics. Officer Scott Weems, a member of the Lubbock SWAT team, testified that he observed several people standing in front of the residence when he arrived at the scene. While waiting to exit the SWAT team van, he observed one of the persons, described as a black male wearing a white tank top and black jean shorts with a large shiny buckle, toss several small objects out of his right hand. However, because he had other responsibilities during the initial moments of the raid, he was unable to investigate immediately. Once inside the residence, he informed a narcotics officer of what he had seen but the officer was unable to locate the objects.

After the residence was secured, Officer Weems returned to the area where he observed the person throw the objects and found two plastic baggies containing an off-white substance near a fence on the east side of the residence. The substance in the baggies was later determined to be ten grams of crack cocaine. After locating the objects, Officer Weems identified appellant, who had been detained, as the person who had tossed the baggies. A pat-down search of appellant yielded $2,724 in cash and marihuana in his shorts pocket. As a result of the raid, twelve people were detained and two were arrested, including appellant, who was charged with possession of the cocaine.

At appellant's trial, in addition to Weems' testimony, the State introduced a video of the raid taken by members of the SWAT team. Although the video did not capture appellant tossing the baggies, it showed the baggies in the location where Weems said he found them and recorded appellant as he identified himself while sitting handcuffed in the

2

driveway.  The video also recorded the individuals detained during the raid as each recited his name, birth date and address.  Appellant stipulated that the substance in the baggies was cocaine and that the offense was committed in a drug-free zone within 1,000 feet of a school, but presented the testimony of a private investigator who concluded that, based on his measurements, it was "possible, but not probable" that appellant could have tossed the baggies to their location from where he was seen standing in the driveway.  In addition, appellant's friend identified appellant's belt which she picked up from the Lubbock County jail and which did not have a large buckle.  At the conclusion of the evidence, the jury found appellant guilty of the offense.

By his sole issue, appellant challenges the factual sufficiency of the evidence linking him to the cocaine found near the residence.  When an appellant challenges the factual sufficiency of the evidence, we review all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex.Crim.App. 2000).  We must determine, after considering all the evidence in a neutral light, whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004), *overruled in part by* Watson v. State, No. PD-469-05, 2006 WL 2956272, at *10 (Tex.Crim.App. Oct. 18, 2006).  We cannot reverse a conviction and order a new trial unless we find some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson*, 2006 WL 2956272, at *10.  We cannot conclude that appellant's conviction is "clearly wrong" or "manifestly

unjust" simply because, based on the evidence presented, we disagree with the jury's verdict. *Id.*; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). Any opinion addressing factual sufficiency also must include a discussion of the most important and relevant evidence that appellant claims undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

To prove unlawful possession of a controlled substance, the State must prove that appellant (1) exercised actual care, custody, control, or management over the substance and (2) knew the substance he possessed was contraband. Tex. Health & Safety Code Ann. § 481.002(38) (Vernon Supp. 2006); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005). The evidence must establish appellant's connection with the controlled substance was more than just fortuitous. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995).

When the accused is not in exclusive possession of the place where contraband is found, additional independent facts and circumstances must affirmatively link him to the contraband. *Deshong v. State,* 625 S.W.2d 327, 329 (Tex.Crim.App. 1981). This "affirmative links rule"[2] is a common sense notion designed to protect innocent bystanders, a parent, child, spouse, roommate, or an acquaintance from conviction based solely upon their "fortuitous proximity to someone else's drugs." *Poindexter,* 153 S.W.3d at 406.

---

[2] By its recent opinion in *Evans v. State*, No. PD-1911-05, 2006 WL 2686552, at *2 (Tex.Crim.App. Sept. 20, 2006), the Court of Criminal Appeals has discontinued its use of the term "affirmative links," stating that in the future it will refer to the indicia simply as "links."

Links may include, but are not limited to: (1) appellant's presence when the contraband was found; (2) whether the contraband was in plain view; (3) appellant's proximity to and the accessibility of the contraband; (4) whether appellant was under the influence of contraband when arrested; (5) whether appellant possessed other contraband or drug paraphernalia when arrested; (6) whether appellant made incriminating statements when arrested; (7) whether appellant attempted to flee; (8) whether appellant made furtive gestures; (9) whether there was an odor of contraband; (10) whether appellant owned or had the right to possess the place where the contraband was found; (11) the amount of contraband found; or (12) whether appellant possessed a large amount of cash. *Taylor v. State,* 106 S.W.3d 827, 832 (Tex.App.–Dallas 2003, no pet.). It is the logical force of these factors, individually or combined, which determines whether the State's evidence links appellant to the contraband. *Id.*; *Wallace v. State*, 932 S.W.2d 519, 524 (Tex.App.–Tyler 1995, pet. ref'd).[3]

As noted, Officer Weems testified he saw a black male, wearing a white tank top and black jean shorts with a large shiny buckle,[4] toss several shiny objects the size of a

---

[3] Although appellant's argument analyzes the evidence through a "links" analysis, this is not a typical case for such an analysis. Appellant's primary argument is not that his proximity to the baggies of cocaine was fortuitous. His primary contention is that factually insufficient evidence establishes he was the person Weems saw throw the baggies. Appellant's brief makes the contention clear, beginning with the statement, "This is a case of misidentification." By Weems' testimony, the cocaine was in appellant's exclusive possession, being in his hand at the time he threw it. *Cf. Deshong*, 625 S.W.2d at 329 (links analysis necessary when defendant not in exclusive possession of place contraband found).

[4] He later said the man he saw toss the objects "was wearing a white muscle shirt, black jean shorts, and he had a large shiny buckle on his belt."

ping-pong ball from the grassy area on the east side of the driveway. He later found baggies of cocaine lying on the ground in the same area where he saw the man toss the objects. Weems' testimony, and the video, show he identified appellant, who sat handcuffed where he was found in the driveway, as the person he saw. Appellant was the only person at the residence whose clothing matched Weems' description, and he was arrested in the driveway close to where Weems said he saw a man toss the objects. When arrested, appellant had a large amount of cash in small bills on his person and a small baggie of marihuana in his pocket.

By his brief, appellant maintains that there are several reasons the evidence was insufficient to show he possessed the cocaine. First, he contends it is unlikely he could have tossed the baggies of cocaine from where Weems said he was standing and be arrested on the opposite side of the driveway, because of the short amount of time it took officers to get to his location after they initiated the raid. Weems acknowledged, and the video reflects, that events at the beginning of the raid happened in seconds. Appellant claims the testimony of private investigator Jerry Randall discredits the jury's verdict. Randall, a retired Department of Public Safety officer, testified that he conducted experiments by tossing rolled-up dollar bills and noting the distance that he could toss them.[5] However, on cross-examination, Randall conceded that the physical properties of

---

[5] Randall said he used the currency for his experiment because a dollar bill weighs one gram. He combined five bills for his experiment, and said he was able to throw that five-gram object about 30 to 35 feet. Randall also testified he measured distances between some positions in the front yard of the residence. Although his testimony is not clear on this point, it indicates Randall's opinion was that one of the baggies would have traveled more than 40 feet if appellant had thrown it from where Weems said he saw him.

the item thrown would affect its flight, that he did not experiment with objects shaped like the baggies of crack cocaine, and that the eventual location of the cocaine would depend on where the thrower actually was standing. Next, appellant points out that the video does not show him tossing the objects, that there were numerous persons at the residence, and that the only person visible on the video near the area where Officer Weems said he threw the objects was a man later identified as Rashard Johnson. However, the video evidence undermines appellant's claim that the time frame was too short for him to throw the objects and be arrested on the other side of the driveway. Evidence showed that Johnson was apprehended across the yard near the west side of the residence. If the time frame permitted Johnson to reach the location at which he was arrested, the jury reasonably could have concluded appellant also could have reached the other side of the driveway after tossing the contraband.

Appellant also points us to the discrepancy regarding the belt buckle observed by Officer Weems and a belt and buckle admitted into evidence. Officer Weems testified that he was able to identify appellant in part by his large shiny belt buckle. Appellant's friend testified she picked up appellant's possessions from the jail property room at his request. She produced a belt without a large buckle and identified it as the belt she picked up among appellant's possessions. However, on cross-examination, the State established that the witness had the belt in her possession for some time and brought it to court only after hearing the evidence against appellant at trial. The jury was not required to accept

the suggestion that it was the same belt, or had the same buckle, as that worn by appellant when he was arrested.[6]

Finally, appellant contends the facts in this case are similar to the facts in *White v. State*, 890 S.W.2d 131 (Tex.App–Texarkana 1994, pet. ref'd). In *White*, the defendant was convicted of possession with intent to deliver after officers found cocaine in a boat parked in a vacant lot adjacent to the defendant's residence. *Id.* at 134. The Texarkana court found the evidence to be factually insufficient to convict because the only evidence connecting him to the contraband was the fact that "he and several other people were in the lot." *Id.* at 139. Appellant contends that, as in *White*, the "countervailing evidence" in the present case undermines the jury's verdict. We disagree.

Here the evidence consists of more than just appellant's presence on the premises where the drugs were found. Officer Weems' testimony identifying appellant as the person he saw throw the drugs, augmented by appellant's close proximity to the area where the drugs were found, support the jury's verdict. The contraband and large amount of cash found on appellant's person also provide evidence supporting appellant's guilt. *Taylor*, 106 S.W.3d at 832. In this regard, the jury, as trier of fact, may choose to believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). A jury's decision is not manifestly unjust merely because it resolved conflicting views of evidence in favor of the State. *Cain v. State*, 958 S.W.2d 404, 410 (Tex.Crim.App. 1997).

---

[6] Appellant's belt buckle is not visible on the video.

After reviewing the entire record, we find the evidence indicating appellant possessed cocaine with intent to deliver to be sufficient. Viewing the evidence in a neutral light, we hold the jury was rationally justified in finding guilt beyond a reasonable doubt. Appellant's issue is overruled.

Accordingly, the trial court's judgment is affirmed.

James T. Campbell
Justice

Do not publish.